IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


THOMAS CLEVELAND WILLIAMS,

     Plaintiff,

v.                                         CASE NO. 5:10-cv-83-RS-GRJ

LT. KARLA JO BROCK,

     Defendant.
_____/


## REPORT AND RECOMMENDATION

     Plaintiff initiated this case by filing a *pro se*, *in forma pauperis*, prisoner civil rights complaint under 42 U.S.C. § 1983, and is proceeding pursuant to an Amended Complaint. Doc. 21. Plaintiff is an inmate in the custody of the Florida Department of Corrections. The Defendant, Lt. Brock, is the administrator of the Washington County Jail. Plaintiff contends that Defendant violated his constitutional rights in connection with a probation violator sentence imposed in Washington County, and that Defendant's actions caused Plaintiff to serve an extra 162 days in state prison on an expired sentence. Now pending before the Court are the parties' cross-motions for summary judgment, Docs. 49 and 50. Each party has responded in opposition to the other's motion. Docs. 50, 54. For the reasons discussed below, the undersigned recommends that both motions for summary judgment be denied.

## Background and Allegations of Complaint

Plaintiff has a complicated custodial history, which may be summarized as follows.  *See* Docs. 49, 50.  Plaintiff was convicted of second degree murder and arson in Washington County, and was sentenced to 12 years imprisonment and five years of probation.[1]  Plaintiff entered the Department of Corrections (DOC) on this sentence in July 1993.  He was released on July 1, 1999, and his Washington County probation commenced.  Doc. 49, Exh. A & B.

On May 7, 2001, the state court issued an arrest warrant charging Plaintiff with violating the conditions of probation (the "VOP warrant") by failing to submit a monthly report, failing to pay the cost of supervision, failing to obtain consent to change his residence, and failing to provide proof of community service.  *Id*. Exh. C.

On July 14, 2002, Plaintiff was arrested in Pasco County on drug and arson charges, and also on the Washington County VOP warrant.  He was arraigned on all charges, including the VOP, and was committed to the custody of the Sheriff of Pasco County.  *Id*. Exh. D & E.

On September 27, 2002, the U.S. Marshal Service (USMS) notified the Pasco County Jail of a detainer stemming from controlled-substance and firearms offenses in the Middle District of Florida.  *Id*. Exh. F.  Plaintiff was released to the USMS on December 13, 2002, and the USMS was advised of the Washington County hold on Plaintiff.  *Id*. Exh. G & H.

On May 2, 2003, Plaintiff was sentenced to 97 months in federal prison.  He was

---

[1]It appears that Plaintiff's sentence would be characterized as a "probationary split sentence," meaning a period of incarceration followed by a period of probation.  *See*, e.g., *Moore v. Stephens*, 804 So2d 575, 577 (Fla. 5th DCA 2002).

released on February 20, 2009.  Plaintiff was transported to Washington County Jail, where the VOP warrant was executed on February 21, 2009.  *Id*. Exh. J.

Plaintiff pleaded guilty to the VOP charges, pursuant to a plea agreement that provided for "credit for prior prison and jail time."  Doc. 50, Exh. I.  Plaintiff was adjudicated guilty on February 26, 2009, and sentenced to three years in state prison, with credit for time served.  Doc. 49, Exh. K.  Specifically, by checking a box on the judgment and commitment form, the court ordered that Plaintiff receive "original jail credit."  Although the form provides a space for the court to fill in the number of days of jail credit, the parties agree that the court did not determine the number of days at sentencing.[2]  The court also checked the box on the form directing the DOC to "apply the original jail time credit and to compute and apply credit for time served and the gain time awarded pursuant to section 944.275 Florida Statutes."  *Id*. Exh. K; Doc. 50 Exh. A.

After the hearing, Defendant completed a certification to the DOC reflecting that Plaintiff was "originally incarcerated in county jail" on February 21, 2009, that he was "arrested on violation of supervision" on February 21, 2009, and that he was sentenced on February 26, 2009.  Doc. 49, Exh. L.   Defendant also completed a memorandum to the Washington County Clerk of Court certifying that Plaintiff was entitled to six days of jail credit "for time spent in the Washington County Jail or as directed by the Circuit Court Judge."  Doc. 50 at 31.

Defendant contends that during his VOP hearing the court stated:  "Mr. Williams

[2]Defendant's Exhibit K reflects, however, that "6" is filled in as the number of days of county jail credit awarded.  Doc. 49, Exh. K.  On Plaintiff's copy of the original judgment and commitment, the form is blank.  Doc. 50, Exh. A.

this court is awarding you enough credit time served to go to the North West Florida Reception Center, get processed in and processed out in the same day.  It's been a very long 17 years, good luck."  Doc. 21.  Plaintiff alleges that he asked the court whether "all present incarceration" meant 2418 days credit[3], and the judge replied that he did not know the exact number of days and that he would "send it to the Washington County Jail for them to compute," but that he would also prepare a transport order for March 2, 2009, allegedly so that Plaintiff could be with his family on that afternoon.  *Id*.

Plaintiff was processed into the DOC on March 2, 2009, but was not immediately processed out.  In the Complaint, Plaintiff alleges that after he entered DOC custody he learned that Defendant had made an error in computing the credits on his sentence, although he does not specify when he learned of the error.  Doc. 21.

On May 5, 2009, Plaintiff filed a motion to correct illegal sentence in Washington County Circuit Court, arguing that he had not received all credit toward his sentence that the court had intended.  Doc. 50, Exh. I.  The court granted the motion at a hearing on August 10, 2009, and amended Plaintiff's judgment and commitment by handwriting "plus other prison time not awarded 2412 days," next to the paragraph directing the DOC to apply original jail time credit and compute and apply credit for time served and gain time.  The amended judgment also reflects that Plaintiff was entitled to "6 days" of "original jail credit".  Plaintiff was returned to the Washington County Jail, his paperwork

---

[3]It appears that this figure is derived from Plaintiff's belief that he was entitled to 2412 days (from the July 14, 2002, Pasco County arrest through February 20, 2009, when he was released from federal prison) plus the six days that Plaintiff served in the Washington County Jail pending his VOP hearing and commitment to DOC.  *See* Doc. 50, Exh. I (motion to correct illegal sentence).  Defendant Brock maintains that Defendant was entitled to credit for the time previously served in state prison on the second degree murder charge.  *See* Doc. 49 at 8.

was finalized, and he was released.  Doc. 50, Exh. M.[4]

In the Complaint, Plaintiff alleges that as a consequence of Defendant's actions he served 162 days in prison from March 2, 2009, through August 10, 2009, beyond the time that he should have served for the VOP sentence.  Plaintiff alleges that Defendant violated his "rights to freedom and everything that comes with that right."  For relief, Plaintiff seeks monetary damages.  Doc. 21.

## Summary Judgment Motions

Defendant contends that she is entitled to summary judgment because she was not legally responsible for computing credit for time served on Plaintiff's VOP sentence. Instead, pursuant to state law, the sentencing court is responsible for calculating the number of days of jail credit to award at sentencing, and the DOC calculates the number of days of credit for prior prison service and gain-time after a convicted person is received into custody.  Defendant, as the jail administrator, has the statutory obligation to certify in writing to the DOC the date the sentence was imposed, the date the prisoner was delivered to the DOC, and the date and reason for any period spent at liberty after sentencing, and Defendant in this case did so.  Doc. 49 (citing Fla. Stat. § 921.161(2)).

Defendant concedes, through counsel, that Plaintiff may have been entitled to more than six days of jail credit for the time he spent in Washington County Jail, taking into account the 152 days Plaintiff spent in Pasco County Jail between his arrest as a

---

[4]Plaintiff is presently confined in the DOC pursuant to a 2010 Pasco County controlled-substance conviction.  He has a current release date of March 21, 2012, but also has a pending federal detainer in the Middle District of Florida.  *See* DOC Inmate Population Information; www.dc.state.fl.us.

probation violator on July 14, 2002, and his transfer into federal custody.  Under that

scenario, Plaintiff would have been entitled to a total of 158 days of jail credit toward his

three-year VOP sentence.  Defendant reiterates that it was the sentencing court's

responsibility to make that determination.  Defendant further argues that it was the

DOC's failure to award Plaintiff his prior prison credit that caused him not to be released

immediately after being processed into DOC.  Doc. 49.

In opposition to Defendant's motion and in his own summary judgment motion,

Plaintiff disputes that Defendant did not have the responsibility to calculate his jail

credit.  Plaintiff argues that the Washington County Jail records (appended to his

motion) showed that he was arrested on the VOP warrant on July 14, 2002, and that

Defendant should have looked at the jail's records in order to determine the correct

arrest date that was certified to the DOC.  Plaintiff contends that failure to review the

records amounts to "deliberate indifference" on Defendant's part.  Plaintiff argues that

when Defendant received the incomplete commitment form from the sentencing court,

she should either have sent it back to the sentencing court for the court to award the

correct amount of credits, or she should have sent it to the DOC so that the DOC could

contact the court to award the time.  Plaintiff argues that the Florida Statutes and the

U.S. Constitution compel such action.  Docs. 50, 52.

## Summary Judgment Standard of Review

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary

judgment is appropriate only when the Court is satisfied that "there is no genuine issue

as to any material fact and that the moving party is entitled to a judgment as a matter of

law."  In applying this standard, the Court must examine the pleadings, depositions,

answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party." *Samples on Behalf of Samples v. Atlanta,* 846 F. 2d 1328, 1330 (11th Cir. 1988). As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." *Rollins v. Techsouth,* 833 F.2d 1525, 1528 (11th Cir. 1987). The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 785-86 (11th Cir. 2005).

## DISCUSSION

Initially, the undersigned observes that neither party makes a compelling argument that they are entitled to judgment as a matter of law, because the motions are devoid of any discussion of the relevant legal standard governing Plaintiff's constitutional claim.

In any section 1983 action, the initial inquiry must focus on whether two essential elements are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2)  whether the conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part on other*

*grounds by Daniels v. Williams*, 474 U.S. 327, 330-331 (1986); *see also Duke v. Cleland*, 5 F.3d 1399, 1403 (11th Cir.1993) (citing *Parratt*, 451 U.S. at 535).  There is no dispute that Defendant was a person acting under color of state law.  The critical factor in this case is what standard governs Defendant's conduct for purposes of determining whether she should be held liable for any violation of Plaintiff's constitutional rights.

Plaintiff's underlying constitutional right is well-established.  When a prisoner's sentence has expired, he is entitled to release.  *See, e.g., Whirl v. Kern*, 407 F.2d 781, 791 (5th Cir. 1969) ("There is no privilege in a jailer to keep a prisoner in jail beyond the period of his lawful sentence.") (citations omitted); *Cannon v. Macon County*, 1 F.3d 1558, 1562–63 (11th Cir.1993), *modified* 15 F.3d 1022 (11th Cir.1994) (finding "[t]he constitutional right to be free from continued detention after it was or should have been known that the detainee was entitled to release" a well recognized § 1983 claim) (citations omitted); *Douthit v. Jones*, 619 F.2d 527, 532 (5th Cir.1980) (stating "[d]etention of a prisoner thirty days beyond the expiration of his sentence in the absence of a facially valid court order or warrant constitutes a deprivation of due process.").

Courts are divided as to whether this right is founded in the Fourteenth Amendment's due process clause or the Eighth Amendment's proscription against cruel and unusual punishment.  *See McCurry v. Moore*, 242 F.Supp.2d 1167, 1178-80 (N.D. Fla. 2002) (discussing cases).  In *Cannon*, for instance, the Eleventh Circuit held that a § 1983 claim for false imprisonment may be made under the Fourteenth Amendment.

*Cannon*, 1 F.3d at 1562 ("[C]ontinued detention in the face of repeated protests will deprive the accused of liberty without due process.").  However, as the court pointed out in *McCurry*, *Cannon* concerned a pretrial detainee who was detained based upon a misidentification.  In the instant case, as in *McCurry*, Plaintiff was a sentenced prisoner and therefore the Eighth Amendment would be applicable to his claims.  *See McCurry*, 242 F.Supp.2d at 1179; *Sample v. Diecks*, 885 F.2d 1099, 1109-10 (3d Cir. 1989); *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985).  Under either a due process or Eighth Amendment analysis, "[t]he threshhold for liability . . . is the same," the Plaintiff must establish subjective culpability on the part of the Defendant.  *McCurry*, 242 F.Supp.2d at 1180; *see Cannon*, 1 F.3d at 1563 ("a showing of deliberate indifference is required to establish a violation of substantive due process rights protected by the Fourteenth Amendment.").

In *Sample*, the Third Circuit assessed a similar claim under the Eighth Amendment, stating "[w]e think there can be no doubt that imprisonment beyond one's term constitutes punishment within the meaning of the Eighth Amendment."  *Sample*, 885 F.2d at 1108.  As to whether such punishment is "cruel and unusual," the Court concluded that "detention for a significant period beyond the term of one's sentence inflicts a harm of a magnitude similar to that involved in [*Estelle v. Gamble*]."  *Id*. at 1109.  **"**Accordingly, we hold that there can be no Eighth Amendment liability in this context in the absence of a showing of deliberate indifference on the part of the defendant to whether the plaintiff suffers an unjustified deprivation of his liberty."  *Id*. at 1110.  The Court assessed the Eighth Amendment claim in that case against the

following test:

> To establish § 1983 liability in this context, a plaintiff must first
> demonstrate that a prison official had knowledge of the prisoner's problem
> and thus of the risk that unwarranted punishment was being, or would be,
> inflicted. Second, the plaintiff must show that the official either failed to act
> or took only ineffectual action under circumstances indicating that his or
> her response to the problem was a product of deliberate indifference to
> the prisoner's plight. Finally, the plaintiff must demonstrate a causal
> connection between the official's response to the problem and the
> infliction of the unjustified detention.

*Id*.

    *Sample* provides an appropriate framework for the analysis of Plaintiff's claims in this case.  The starting point for this analysis is Defendant's subjective knowledge regarding Plaintiff's arrest date and incarceration history.  Defendant's summary judgment motion relies heavily on contrasting her limited statutory duty to certify Plaintiff's dates in county custody with the sentencing court's obligation to determine the actual number of days of "jail time credit to be awarded for time served between the date of arrest as a violator and the date of recommitment," and with the DOC's responsibility for "calculating the credit for all other time previously served on the prior sentence for the offense for which the offender is being recommitted."   Doc. 49 at 6. According to Plaintiff's allegations, the sentencing court specifically directed that the Washington County Jail would make the determination.  While Defendant asserts that the sentencing court was obligated by statute to make the determination, the record is clear that the Defendant did certify to the Clerk of Court that Plaintiff was entitled to only six days of jail credit.  Doc. 50 at 31.  What remains unclear is what procedures are mandated when the jail receives a commitment order that is silent as to the number of

days of jail credit being awarded, or what Defendant subjectively understood her duties to be upon receipt of the commitment order.  Defendant did not provide an affidavit in support of the summary judgment motion.  Receipt of a commitment order that is missing a key provision arguably gives rise to knowledge that there is a problem with a prisoner's sentence, and thus a risk that unwarranted punishment could be inflicted. *See Sample*, 885 F.2d at 1110.

As to the second part of the *Sample* test, Plaintiff alleges that the Washington County Sheriff had records reflecting his Pasco County arrest on the VOP warrant and his continued detention by state and federal authorities pursuant to the Washington County VOP hold.  Doc. 50.   Defendant conceded in her responses to Plaintiff's interrogatories that she did not review these files in connection with certifying Plaintiff's jail credit.  *Id*. at 84.  If, under the circumstances, those documents were necessary to correctly certify Plaintiff's jail credit to the Clerk of Court, then arguably a reasonable jury could conclude that Defendant's failure to review the records was a product of deliberate indifference to the risk that Plaintiff might be subject to unwarranted imprisonment due to an error in the certification.   *See Sample*, 885 F.2d at 1110.

As to the third part of the *Sample* test – causation – it cannot be determined on this record precisely what factors were involved in the sentencing court's determination of time credits, or in the DOC's application of such credits to Plaintiff's sentence upon intake.  Defendant "assumes" that the sentencing court ultimately awarded the 2412 days of credit on the VOP sentence for time previously served on the second degree murder charge.  Doc. 49 n.3.  While Defendant further contends that it is immaterial

how the sentencing court awarded the credit because Defendant was not responsible for making the calculation, an understanding of how Plaintiff's sentence was ultimately determined would greatly aid this Court's consideration of the parties' claims and defenses.  The record is devoid of any transcripts or documents from the sentencing court or from the DOC explaining how the court arrived at the conclusion that Plaintiff was entitled to 2412 days of credit, or how the DOC applied such credits.  On this record, Defendant has not refuted Plaintiff's claim that the credits were based on the date of his Pasco County arrest and all subsequent incarceration.  Plaintiff's claim has support in the record, because he made the same argument in his motion to correct his sentence, and there is nothing in the record that suggests the sentencing court decided the motion on a different basis.  *See* Doc. 50 at 74.

In sum, the instant motions do not place their arguments within the framework of the appropriate legal standard, which is tied to considerations of subjective culpability that cannot be resolved in either parties' favor on the basis of this record.  Consequently, because there remain unresolved issues of fact and neither party has demonstrated that they are entitled to judgment as a matter of law – on the record presently before the Court – the motions for summary judgment are due to be denied.

## RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that the parties' motions for summary judgment, Docs. 49 & 50, be **DENIED**, and that this case be

referred to the undersigned for further proceedings, including, if appropriate, the filing of

renewed and revised motions for summary judgment.

      **IN CHAMBERS**  this 2nd day of February 2012.

                            *s/Gary R. Jones*

                          GARY R. JONES
                          United States Magistrate Judge

<u>**NOTICE TO THE PARTIES**</u>

      **A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**