IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

THOMAS CLEVELAND WILLIAMS,

      Plaintiff,

v.                                                CASE NO. 5:10-cv-83-RS-GRJ

LT. KARLA JO BROCK,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

      Plaintiff initiated this case by filing a *pro se*, *in forma pauperis*, prisoner civil rights complaint under 42 U.S.C. § 1983, and is proceeding pursuant to an Amended Complaint.  Doc. 21.  Plaintiff is an inmate presently in the custody of the Federal Bureau of Prisons.  The Defendant, Lt. Brock, is the administrator of the Washington County Jail.  Plaintiff contends that Defendant violated his constitutional rights in connection with a probation violator sentence imposed in Washington County, and that Defendant's actions caused Plaintiff to serve more than 150 extra days in state prison following the expiration of his sentence.  Specifically, Plaintiff contends that Defendant failed in her duty to correctly certify the number of days of jail credit he was supposed to receive following his VOP hearing.  Now pending before the Court is Defendant's motion for summary judgment, Doc. 70.  The Plaintiff has filed a response in opposition to the motion, Doc. 77, and this matter is now ripe for decision.  For the reasons discussed below, the undersigned recommends that Defendant's motion be granted

and this case dismissed with prejudice.[1]

## Summary Judgment Standard of Review

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party." *Samples on Behalf of Samples v. Atlanta,* 846 F. 2d 1328, 1330 (11th Cir. 1988). As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987). The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 785-86 (11th Cir. 2005).

## Summary Judgment Evidence and Plaintiff's Claims

The following facts regarding Plaintiff's custodial history are undisputed. Plaintiff was convicted of second degree murder and arson in Washington County, and was

---

[1]The Court previously denied the parties' cross motions for summary judgment. *See* Docs. 58, 59.

sentenced to 12 years imprisonment and five years of probation.[2]  Plaintiff entered the

Department of Corrections (DOC) on this sentence in July 1993.  He was released on

July 1, 1999, and his Washington County probation commenced.  Doc. 70, Exh. A & B.

On May 7, 2001, the Washington County Sheriff's Office issued an arrest

warrant charging Plaintiff with violating the conditions of probation (the "VOP warrant")

by failing to submit a monthly report, failing to pay the cost of supervision, failing to

obtain consent to change his residence, and failing to provide proof of community

service.  *Id*. Exh. C.

On July 14, 2002, Plaintiff was arrested in Pasco County on drug and arson

charges, and also on the Washington County VOP warrant.  He was arraigned on all

charges, including the VOP, and was committed to the custody of the Sheriff of Pasco

County.  *Id*. Exh. D & E.

On September 27, 2002, the U.S. Marshal Service (USMS) notified the Pasco

County Jail of a detainer stemming from controlled-substance and firearms offenses in

the Middle District of Florida.  *Id*. Exh. F.  Plaintiff was released to the USMS on

December 13, 2002, and the USMS was advised of the Washington County hold on

Plaintiff.  *Id*. Exh. G & H.

On May 2, 2003, Plaintiff was sentenced to 97 months in federal prison.  On

August 19,2003, the Washington County Sheriff s Office requested that a hold be

placed on Plaintiff.  He was released on February 20, 2009.  Plaintiff was transported to

Washington County Jail, where the VOP warrant was executed on February 21, 2009.

---

[2]It appears that Plaintiff's sentence would be characterized as a "probationary split sentence," meaning a period of incarceration followed by a period of probation.  *See*, e.g., *Moore v. Stephens*, 804 So2d 575, 577 (Fla. 5th DCA 2002).

*Id*. Exh. I, J, K.

Plaintiff pleaded guilty to the VOP charges, pursuant to a plea agreement that provided for "credit for prior prison and jail time." Doc. 50, Exh. I. Plaintiff was adjudicated guilty on February 26, 2009, and sentenced to three years in state prison, with credit for time served. Doc. 49, Exh. K. The court stated its belief that Plaintiff had "done your time," and would be taken to the Department of Corrections "but from the way I understand it, it will probably be a process in and process out." *Id*. Exh. M. The court completed a Uniform Commitment to Custody of Department of Corrections (UCC-DOC) form on February 26,2009 awarding the Plaintiff an unspecified amount of original jail credit and directing the Department of Corrections to "apply the original jail time credit and to compute and apply credit for time served and the gain time awarded pursuant to section 944.27 5 , Florida Statutes. (Pre October I, 1989)". *Id*. Exh. N. Plaintiff was returned to Washington County Jail to await transfer to state prison.

Defendant's affidavit reflects that as Jail Administrator, she is responsible for certifying to the DOC, pursuant to Fla. Stat. § 92I.16I, Florida Statutes, the number of days an inmate was incarcerated in county jail after being sentenced and before being delivered to the DOC. Doc. 70., Exh O. She is advised of the date of an inmate's sentence upon receipt of the UCC-DCC from the Washington County Clerk of Court. *Id*. The UCC-DCC form, which is completed by the court during the sentencing hearing, records the judgment and sentence, and provides for the award of credit for time served in jail and prison on the relevant charges. *Id*. "Original jail credit" as referenced on the form means the number days an inmate was incarcerated in county jail between the date of arrest as a violator and the date the sentence was imposed. *Id*.

If, as in this case, the number of days of original jail credit awarded is not specified by the Court on the UCC-DOC form, Defendant is responsible for calculating the amount of original jail credit based on a review of the inmate's Florida criminal history check. *Id*. The criminal history check provides the date the inmate was arrested in Washington County, or in another county pursuant to a Washington County warrant. *Id*. Defendant calculates the number of days the inmate spent incarcerated in county jail between the date of arrest and the date the sentence was imposed and specifies that number on the UCC-DOC form. *Id*.

On February 27,2009, Defendant received the UCC-DOC for Plaintiff. Because the number of days of original jail credit was blank, Defendant ran a criminal history check on the Plaintiff which reflected that he was arrested on Washington County warrant No. 92-254-CF on February 21,2009. *Id*. Defendant also determined that Plaintiff was originally incarcerated in county jail on that arrest on February 2l, 2009. *Id*. Plaintiff's criminal history check did not reflect that he was arrested in Pasco County on Washington County warrant No. 92-254-CF in July 2002, nor did it reflect that Plaintiff had been arrested by Zephyrhills P.D. on charges of manufacturing methamphetamine or arson in July 2002. *Id.* On February 27, 2009, Defendant completed a Sheriff's Certificate pursuant to Fla. Stat. § 92l.16l, indicating that the Plaintiff was arrested on the VOP warrant on February 21, 2009, was originally incarcerated in county jail on February 21,2009, and was convicted and sentenced on February 26, 2009. *Id*. Since the number of days of "original jail credit" awarded to the inmate was not determined by the Court, Defendant certified that Plaintiff was entitled to 6 days of original jail time credit based on these dates. *Id*.

Plaintiff was processed into the DOC on March 2, 2009, but was not immediately processed out.  In the Complaint, Plaintiff alleges that after he entered DOC custody he learned that Defendant had made an error in computing the credits on his sentence. Doc. 21.  On May 5, 2009, Plaintiff filed a motion to correct illegal sentence in Washington County Circuit Court, arguing that he had not received all credit toward his sentence that the court had intended.  Doc. 50, Exh. I.  The court granted the motion at a hearing on August 10, 2009, and amended Plaintiff's judgment and commitment by handwriting "plus other prison time not awarded 2412 days," next to the paragraph directing the DOC to apply original jail time credit and compute and apply credit for time served and gain time.  The amended judgment also reflects that Plaintiff was entitled to "6 days" of "original jail credit".  Plaintiff was returned to the Washington County Jail, his paperwork was finalized, and he was released.  Doc. 70, Exh. O, Q.

In the Complaint, Plaintiff alleges that as a consequence of Defendant's actions he served 162 days in prison from March 2, 2009, through August 10, 2009, beyond the time that he should have served for the VOP sentence.  Plaintiff alleges that Defendant violated his "rights to freedom and everything that comes with that right."  For relief, Plaintiff seeks monetary damages.  Doc. 21.

## DISCUSSION

In any section 1983 action, the initial inquiry must focus on whether two essential elements are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2)  whether the conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.  *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part on other*

*grounds by Daniels v. Williams*, 474 U.S. 327, 330-331 (1986); *see also Duke v. Cleland*, 5 F.3d 1399, 1403 (11th Cir.1993) (citing *Parratt*, 451 U.S. at 535). There is no dispute that Defendant was a person acting under color of state law. The critical factor in this case is what standard governs Defendant's conduct for purposes of determining whether she should be held liable for any violation of Plaintiff's constitutional rights.

Plaintiff's underlying constitutional right is well-established. When a prisoner's sentence has expired, he is entitled to release. *See, e.g., Whirl v. Kern*, 407 F.2d 781, 791 (5th Cir. 1969) ("There is no privilege in a jailer to keep a prisoner in jail beyond the period of his lawful sentence.") (citations omitted); *Cannon v. Macon County*, 1 F.3d 1558, 1562–63 (11th Cir.1993), *modified* 15 F.3d 1022 (11th Cir.1994) (finding "[t]he constitutional right to be free from continued detention after it was or should have been known that the detainee was entitled to release" a well recognized § 1983 claim) (citations omitted); *Douthit v. Jones*, 619 F.2d 527, 532 (5th Cir.1980) (stating "[d]etention of a prisoner thirty days beyond the expiration of his sentence in the absence of a facially valid court order or warrant constitutes a deprivation of due process.").

Courts are divided as to whether this right is founded in the Fourteenth Amendment's due process clause or the Eighth Amendment's proscription against cruel and unusual punishment. *See McCurry v. Moore*, 242 F.Supp.2d 1167, 1178-80 (N.D. Fla. 2002) (discussing cases). In *Cannon*, for instance, the Eleventh Circuit held that a § 1983 claim for false imprisonment may be made under the Fourteenth Amendment.

*Cannon*, 1 F.3d at 1562 ("[C]ontinued detention in the face of repeated protests will deprive the accused of liberty without due process."). However, as the court pointed out in *McCurry*, *Cannon* concerned a pretrial detainee who was detained based upon a misidentification. In the instant case, as in *McCurry*, Plaintiff was a sentenced prisoner and therefore the Eighth Amendment would be applicable to his claims. *See McCurry*, 242 F.Supp.2d at 1179; *Sample v. Diecks*, 885 F.2d 1099, 1109-10 (3d Cir. 1989); *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985). Under either a due process or Eighth Amendment analysis, "[t]he threshhold for liability . . . is the same," the Plaintiff must establish subjective culpability on the part of the Defendant. *McCurry*, 242 F.Supp.2d at 1180; *see Cannon*, 1 F.3d at 1563 ("a showing of deliberate indifference is required to establish a violation of substantive due process rights protected by the Fourteenth Amendment.").

In *Sample*, the Third Circuit assessed a similar claim under the Eighth Amendment, stating "[w]e think there can be no doubt that imprisonment beyond one's term constitutes punishment within the meaning of the Eighth Amendment." *Sample*, 885 F.2d at 1108. As to whether such punishment is "cruel and unusual," the Court concluded that "detention for a significant period beyond the term of one's sentence inflicts a harm of a magnitude similar to that involved in [*Estelle v. Gamble*]." *Id*. at 1109. **"**Accordingly, we hold that there can be no Eighth Amendment liability in this context in the absence of a showing of deliberate indifference on the part of the defendant to whether the plaintiff suffers an unjustified deprivation of his liberty." *Id*. at 1110. The Court assessed the Eighth Amendment claim in that case against the

following test:

> To establish § 1983 liability in this context, a plaintiff must first demonstrate that a prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted. Second, the plaintiff must show that the official either failed to act or took only ineffectual action under circumstances indicating that his or her response to the problem was a product of deliberate indifference to the prisoner's plight. Finally, the plaintiff must demonstrate a causal connection between the official's response to the problem and the infliction of the unjustified detention.

*Id*.

*Sample* provides an appropriate framework for the analysis of Plaintiff's claims in this case.

Defendant's summary judgment evidence establishes that Defendant did not have subjective knowledge that Plaintiff's DOC sentence might be calculated incorrectly after Defendant left the custody of the Washington County Jail.  The information available to Defendant upon receipt of the UCC-DOC reflected that Defendant was arrested on the VOP warrant on February 21, 2009, confined at Washington County Jail, and then committed to the custody of the DOC on February 26, 2009.  The state court's judgment specifically directs the DOC – not Defendant – to apply the original jail time credit and to compute and apply credit for time served and gain time awarded to Plaintiff during his term of incarceration for the Washington County conviction.  Thus, the undisputed evidence reflects that Defendant was not aware of the risk that Plaintiff would be confined by the DOC beyond the sentence intended by the state court. Plaintiff has come forward with no competent summary judgment evidence that refutes Defendant's evidence that she lacked such knowledge.   On this record, the undersigned concludes that Plaintiff's deliberate-indifference claim fails on the first

element of the *Sample* analysis. Such subjective culpability is the threshhold for liability on a deliberate-indifference claim. *See Sample*, 885 F.2d at 1108; *McCurry*, 242 F.Supp.2d at 1180; *Cannon*, 1 F.3d at 1563.[3]

## **RECOMMENDATION**

It is respectfully **RECOMMENDED** that the Defendant's motion for summary judgment, Doc. 70, should be **GRANTED**, and this case should be dismissed with prejudice.

**IN CHAMBERS** this 11th day of January 2013.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

---

[3]Even if Plaintiff established the threshhold for liability and that Defendant acted or failed to act with the requisite deliberate indifference, on this record Plaintiff has not shown that there is a causal connection between Defendant's actions and his detention by the DOC beyond the expiration of the sentence intended by the state court. It was the DOC's obligation to determine the date that Plaintiff would be released from DOC custody, after awarding him credit for time served on his original sentence and any gain-time. *See* Doc. 70 Exh. P. As Defendant asserts, even if she had determined that Plaintiff was entitled to "original jail credit" for the time spent in the Pasco County Jail following his Pasco arrest until he was taken into federal custody (for a total of 158 days), it was the DOC's determination of his time credits that resulted in his continued detention.

## <u>NOTICE TO THE PARTIES</u>

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**